```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
DOROTHY NESKE and CHRISTOPHER              :
NESKE, as Parents and Natural Guardians of :          21-CV-10363 (VEC)
A.N., and DOROTHY NESKE and                :
CHRISTOPHER NESKE, Individually,           :          OPINION AND ORDER
                                           :
                         Plaintiffs,       :
                                           :
               -against-                   :
                                           :
                                           :
MEISHA PORTER, in Her Official Capacity as :
Chancellor of the New York City Department of :
Education, and THE NEW YORK CITY           :
DEPARTMENT OF EDUCATION,                   :
                                           :
                         Defendants.       :
-------------------------------------------------------------- X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 08/11/2022

VALERIE CAPRONI, United States District Judge:

      This is yet another lawsuit in the seemingly never-ending litigation growing out of the decisions of a number of parents to remove their children from iHope, a school serving brain-injured children, and enroll them in iBrain, also a school serving brain-injured children.[1] In this iteration,[2] Dorothy and Christopher Neske, parents and guardians of A.N., are seeking

---

[1] For a lengthier discussion of the exodus of students from iHope to iBrain, see *Ventura de Paulino v. New York City Department of Education*, 959 F.3d 519, 528 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 1075 (2021), *reh'g denied*, 141 S. Ct. 1530.

[2] In *Neske I*, this Court declined to issue a "pendency order" and ruled that 20 U.S.C. § 1415(j) did not require New York City to fund A.N.'s tuition and related costs for the 2018–2019 school year at iBrain while Plaintiffs' due process complaint was being resolved. *See Neske v. New York City Dep't of Educ.*, No. 19-CV-2933, 2019 WL 3531959, at *1 (S.D.N.Y. Aug. 2, 2019). Plaintiffs' motion for reconsideration was denied in *Neske II*. *See Neske v. New York City Dep't of Educ.*, No. 19-CV-2933, 2019 WL 5865245, at *4 (S.D.N.Y. Nov. 7, 2019), *aff'd*, 824 F. App'x 81 (2d Cir. 2020). The Second Circuit affirmed both of those decisions in *Neske v. New York City Dep't of Educ.* ("*Neske III*"), 824 F. App'x 81, 82 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 2631 (2021). In *Neske IV*, this Court denied Plaintiffs' request for a pendency order for the 2019–2020 year. *See Neske v. Carranza*, No. 19-CV-8817, Dkt. 65 at 2 (S.D.N.Y. July 20, 2020). In *Neske V*, this Court denied Plaintiffs' request for a pendency order for the 2019–2020 schoolyear and Plaintiffs' motion for a preliminary injunction enforcing a pendency order that had been issued by the IHO but reversed by the SRO. *See Neske v. New York City Dep't of Educ.*, No. 20-CV-3912, 2021 WL 797653, at *2 n.3, *7 (S.D.N.Y. Feb. 25, 2021).

reimbursement pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, for the costs they incurred when they unilaterally enrolled A.N. at iBrain for the 2018-19 school year. Compl., Dkt. 1 at ¶ 1, 24. Plaintiffs seek reversal of a State Review Officer's ("SRO") decision denying them reimbursement. *Id.* at ¶ 24. Plaintiffs moved for summary judgment, Pls. Mem. of Law, Dkt. 40, and Defendants cross-moved for the same, Defs. Mot. for Summ. J., Dkt. 45. For the reasons discussed below, Plaintiffs' Motion for Summary Judgment is DENIED, and Defendants' Cross-Motion for Summary Judgment is GRANTED.

## BACKGROUND

A.N. is a twelve-year-old child with learning disabilities caused by a brain injury. *See* Compl., Dkt. 1 ¶ 7; *see also* Admin. R. ("AR"), Dkt. 31 at R0043. Plaintiffs disagreed with the Department of Education's ("DOE's") Individualized Education Program ("IEP") for the 2017–2018 schoolyear and unilaterally enrolled A.N. at iHope, a private school that specializes in educating students with "brain injuries and brain-based disorders." Compl. ¶ 9. They then sought funding for A.N.'s tuition costs at iHope. *Id.* ¶ 10. An impartial hearing officer ("IHO") ordered "full reimbursement of tuition and other costs of A.N.'s attendance" at iHope. *Neske v. New York City Dep't of Educ.*, No. 20-CV-3912, 2021 WL 797653, at *2 (S.D.N.Y. Feb. 25, 2021). The DOE did not appeal that decision. *See* Compl. ¶ 11.

On February 14, 2018, the Committee on Special Education ("CSE") responsible for the formulation of A.N.'s IEP notified Plaintiffs of a meeting with the CSE for April 30, 2018, to set A.N.'s educational program for the 2018–2019 schoolyear. *See* AR at R0009 (SRO Decision). On February 27, 2018, the CSE notified Plaintiffs that the CSE meeting had been rescheduled for March 20, 2018, as a result of iHope's request to change the meeting date. *See id.* No records

exist of that meeting, and it is unclear whether it ever took place.[3] *See id.* at RR0010 n.4 (SRO Decision). According to Fabiana Czemerinski, chairperson of A.N.'s CSE, the CSE received numerous "cancellations for all the meetings of iHope students" around the same time. *Id.* at R0595 (Czemerinski Testimony). Ms. Czemerinski also testified that iHope parents were being advised by their attorney, Patrick Donohue, the founder of iBrain, "not to participate in the meetings with the CSE." *Id.* at R0595–R0596.[4]

A month later, on April 20, 2018, A.N.'s parents asked the CSE to reconvene for a recorded, in-person meeting at iHope with a full CSE, including the in-person attendance of a physician, and requested a "few proposed dates and times in writing." *Id.* at R0010 (SRO Decision). The parents noted that they were available "at any time." *Id.* at R0929 (DOE Ex. 16). One week later, the district notified Plaintiffs that the meeting had been set for 10:00 a.m. on May 11, 2018. *Id.* at R0010 (SRO Decision), R0917 (DOE Ex. 13). On April 30, 2018, the district informed Plaintiffs that the meeting would be held at the CSE office and that the physician would participate, but not in-person. *See id.* at R0010 (SRO Decision), R0920 (DOE Ex. 14). Ms. Czemerinski testified that because the CSE had received requests for in-person physician attendance from parents of more than thirty-five iHope students, DOE physicians were unable to accommodate everyone's request. *Id.* at R0644. Ms. Czemerinski further testified that

---

[3] During the IHO proceeding, the parties disagreed over whether there was a March 20, 2018, meeting. As the SRO stated, "[t]here is no documentation in the hearing record reflecting that a CSE meeting occurred on that date, such as an IEP, a CSE attendance sheet, meeting minutes, a prior written notice, or an event log, and the CSE chairperson testified during the impartial hearing that the CSE meeting . . . did not go forward." AR at R0010 n.3 (SRO Decision). Nevertheless, the SRO determined that the CSE met without Plaintiffs, *id.* at R009–10. Defendants have not taken a consistent position on whether the meeting took place. In Defendants' brief submitted to the SRO, Defendants apparently admitted that the meeting occurred, *see id.* at R0116, but in their Rule 56.1 Statement of Facts, Defendants claim that the March 20, 2018, meeting did not occur, *see* Def. 56.1 Stmt., Dkt. 46, ¶ 9. Ultimately, the resolution of that factual dispute is not material.

[4] According to Ms. Czemerinski, CSE meeting cancellation letters came from Mr. Donohue; they first came directly from the "Patrick Donohue Law Firm," and then they came from the "iBrain Foundation." *Id.* at R0594–R0596 (Czemerinski Testimony).

physicians who did attend CSE meetings for iHope students "found themselves coming to meetings with no parental participation." *Id.*

On May 3, 2018, the district emailed the April 30 notice to Plaintiffs. *See id.* at R0923–27 (DOE Ex. 15). The next day, Plaintiffs' counsel notified Ms. Czemerinski that the May 11, 2018, meeting "should not proceed because the district scheduled a date rather than offering several options, [A.N.'s] parents were not available on that scheduled date, the meeting notice did not include a parent member or school physician, and the notice did not specify that the school physician would participate in the meeting in person." *Id.* at R0010 (IHO Opinion).

On May 11, 2018, after "many attempts . . . to seek parental participation," *id.* at R0605 (Czemerinski Testimony), the CSE proceeded to meet without A.N.'s parents and to develop A.N.'s IEP for the 2018–2019 school year, *see id.* at R0010 (SRO Decision).[5] In June 2018, without any discussions with the CSE following their failure to attend the May 11 meeting, *id.* at R0269 (Neske Testimony), A.N.'s parents unilaterally enrolled A.N. at iBrain for the upcoming schoolyear, *id.* at R0011 (SRO Decision). Subsequently, Plaintiffs requested reimbursement for A.N.'s tuition at iBrain for the 2018–2019 school year. *Id.* at R0011–12 (SRO Decision). Both the IHO and SRO found that, even though the DOE had denied A.N. a free and appropriate education ("FAPE") and that iBrain was an appropriate placement, equitable considerations counseled in favor of denying them funding. *See* Pls. 56.1 Stmt., Dkt. 37 at ¶¶ 40–44.

---

[5] Plaintiffs initially argued, based on the date of the IEP, that this meeting took place on May 10, 2018, a day ahead of the scheduled date. *See* Pls. Mem. at 3. In their response to Defendants' motion for summary judgment, however, Plaintiffs apparently concede that the meeting took place on May 11 as scheduled. *See* Pls. Resp., Dkt. 49 at 8.

# DISCUSSION

## I.  Legal Standard for Reviewing IDEA Claims

"In considering an IDEA claim, a district court must engage in an independent review of the administrative record and make a determination based on a preponderance of the evidence." *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 837–38 (2d Cir. 2014) (internal quotation omitted).  In undertaking this independent review, courts are "restrained by [their] lack of specialized knowledge and educational expertise" and "must defer to the administrative decision particularly where the state officer's review has been thorough and careful."  *M.W. ex rel. S.W. v. N.Y.C. Dep't of Educ.*, 725 F.3d 131, 138–39 (2d Cir. 2013) (cleaned up); *see also M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d 236, 243 (2d Cir. 2015).

Two factors guide the level of deference owed to administrative opinions: "the quality of the [administrative] opinion and the court's institutional competence."  *C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir. 2014).  To determine the quality of an opinion, "courts must look to the factors that normally determine whether any particular judgment is persuasive, for example, whether the decision being reviewed is well-reasoned, and whether it was based on substantially greater familiarity with the evidence and the witnesses than the reviewing court."  *M.W.*, 725 F.3d at 139 (quotation marks and citation omitted); *M.O.*, 793 F.3d at 243 ("Deference is particularly appropriate when the state officer's review has been thorough and careful, but still we do not simply rubber stamp administrative decisions." (internal quotation omitted)).  Courts defer to the administrative opinion when a matter involves "persistent and difficult questions of educational policy," *C.L.*, 744 F.3d at 838 (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 208 (1982)), but not on "issues of law, such as the proper interpretation of the federal statute and its requirements," *Lillbask ex rel.*

*Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 82 (2d Cir. 2005) (cleaned up). When "the IHO and SRO decision are in agreement," deference is "particularly warranted." *P.C. v. Rye City Sch. Dist.*, 232 F. Supp. 3d 394, 407 (S.D.N.Y. 2017).

II. **The IHO and SRO Reasonably Determined that Plaintiffs Should Be Denied Funding Based on Their Lack of Cooperation**

In evaluating whether plaintiffs are entitled to funding for private school tuition under IDEA, courts apply the *Burlington/Carter* three-part test: "(1) whether the school district's proposed plan will provide the child with a [FAPE]; (2) whether the parents' private placement is appropriate to the child's needs; and (3) a consideration of the equities." *C.F. ex rel. R.F. v. New York City Dep't of Educ.*, 746 F.3d 68, 76 (2d Cir. 2014). At this point, the Defendants have conceded that they did not offer A.N. a FAPE and that iBrain was an appropriate placement. *See* Defs. Resp., Dkt. 48 at 9; AR at R0062 (IHO Opinion). The only issue in dispute, then, is whether the equities warrant granting Plaintiffs' request for funding. *See* Defs. Resp., Dkt. 48 at 9. Because the Court agrees with the IHO and SRO's determinations that the equities counsel against funding A.N.'s attendance at iBrain for the 2018–2019 school year, Plaintiffs are not entitled to tuition reimbursement for the 2018-19 school year.

The IHO and SRO's decisions hinged on their determinations that Plaintiffs behaved unreasonably. *See* AR at R0067 (IHO Decision); R0025–R0028 (SRO Decision). In determining whether parents have acted unreasonably, courts consider factors including:

> whether the parents cooperated with the CSE (e.g., providing reports, attending the meeting, participating in the meeting); whether the parents timely notified the school district of their intent to place their child in a private school; whether the parents visited the DOE's proposed placement; whether the parents intended to genuinely consider a proposed public placement, or whether they would have kept their child in private school regardless of the proposed public placement; whether the parents or the DOE unreasonably delayed anything; and the appropriateness of the DOE's conduct . . . .

*GB v. New York City Dep't of Educ.*, 145 F. Supp. 3d 230, 257 (S.D.N.Y. 2015) (cleaned up).

Particularly "[i]mportant to the equitable consideration is whether the parents obstructed or were uncooperative in the school district's efforts to meet its obligations under the IDEA." *C.L.*, 744 F.3d at 840; *see also J.S. v. Scarsdale Union Free Sch. Dist.*, 826 F. Supp. 2d 635, 671 (S.D.N.Y. 2011). "[P]arents bear the burden of establishing . . . that the equities favor them," *R.E v. New York City Dep't of Educ.*, 694 F.3d 167, 185 (2d Cir. 2012) (citation omitted), and the Neskes have failed to carry their burden.

The IHO and the SRO based their finding that Plaintiffs were uncooperative, in large part, on their assessment that Dorothy Neske, A.N.'s mother, was less credible than Ms. Czemerinski, the chair of the CSE. *See* AR at R0062–64 (IHO Decision); AR at R0028 (SRO Decision). "[C]redibility findings by an IHO are accorded deference unless non-testimonial, extrinsic evidence justifies a contrary conclusion." *P.G. ex rel. D.G. v. City Sch. Dist. of New York*, No. 14-CV-1207, 2015 WL 787008, at *16 (S.D.N.Y. Feb. 25, 2015). The Court agrees with the administrative officers' conclusions given the lack of extrinsic evidence to the contrary and notes, as they did, that Ms. Neske's testimony was rife with contradictions:

> She [first testified that she] did not confer with an attorney and did not discuss her ability to pay under the contract with the iBrain school's administration, then later testified that she discussed the contract "with the law firm that gave us a contract — where we got the contract from." Subsequently, when asked what law firm she was referring to, the witness responded: "I'm not referring to any law firm."

AR at R0066 (IHO opinion) (citations omitted).

The record provides ample support for the IHO's and SRO's determinations that Plaintiffs did not cooperate with the CSE, particularly in light of the strong evidence that Plaintiffs were part of an organized campaign to shift students from iHope to iBrain and to thwart the District's process for preparing IEPs for those students. *See id.* at R0067 (IHO Decision). Indeed, in *Ventura de Paulino v. New York City Department of Education*, the

Second Circuit denied the plaintiffs pendency funding when they unilaterally transferred their children from iHope to iBrain, in part due to the suspicion aroused by the mass migration of students — "[t]he vast majority, if not all, of" whom were represented by Mr. Donohue. 959 F.3d 519, 528 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 1075 (2021), *reh'g denied*, 141 S. Ct. 1530 (2021); *see also* AR at R0062 (IHO Decision).[6]

Like dozens of other iHope parents represented by Mr. Donohue, Plaintiffs insisted on having a physician attend the CSE meeting in-person to discuss A.N.'s IEP but then failed to attend themselves. *See id.* at R0605, R0644, R0654 (Czemerinski Testimony); *id.* at R0488 (Neske Testimony). The IHO determined, and the SRO agreed, that this was a tactic designed "to stymie the DOE's effort to create IEPs for the students." *See* AR at R0065 (IHO Decision); *id.* at R0027 (SRO Decision). This is evidently true. In a May 4, 2018, letter to Ms. Czemerinski from the Brain Injury Rights Group and signed by Mr. Donohue, Mr. Donohue made what was his standard request in these cases — that the CSE only propose dates on which the physician could attend in person. *Id.* at R0948–49 (DOE Ex. 16). The physician attended the meeting for A.N., but the parents did not. *Id.* at R0607, R0654 (Czemerinski Testimony).

Plaintiffs argue that the IHO and SRO improperly punished them for vigorously advocating on A.N.'s behalf and exercising their right, pursuant to 8 N.Y.C.R.R. § 200.5(c)(2)(iv), to speak with a school physician about A.N.'s IEP. *See* Pls. Mem. at 14.[7] That regulation, which states that parents have a "right to request . . . the attendance of the school physician member" at the CSE meeting does not require physicians to attend CSE meetings in-

---

[6] It perhaps bears repeating that Mr. Donohue, in addition to representing many of the parents who abruptly moved their children from iHope to iBrain, is the founder of the Brain Injury Rights Group, purportedly a non-profit, that represents the Neskes, and was a founder of iBrain. *See* AR at R0053, R0058–59.

[7] Parents improperly cite to N.Y.C.R.R. § 200.5(c)(2)(v), which refers the right of a parent to request the presence of an additional parent at the meeting. *See* Pls. Mem. at 14.

person. To the contrary, it explicitly provides that members may attend the CSE meeting via teleconference or videoconference technology. *See* 8 N.Y.C.R.R. § 200.5(d)(7). Plaintiffs do not even attempt to explain why they could not vigorously advocate with a physician who appeared remotely. Plaintiffs' claims that they were simply attempting vigorously to advocate for their child are also undercut by their own unexplained failure to attend the meeting. [8] *See* AR at R0250–R0254 (Neske Testimony).

Although Plaintiffs cooperated with various assessments of their child's needs, including progress reports and classroom evaluations, Pls. Resp., Dkt. 49 at 10, the SRO appropriately found that the parents' overall behavior was uncooperative. While progress reports and other means of assessment are undoubtedly important, they all exist in service of formulating an IEP and, at that crucial step, Plaintiffs were absent.

The IDEA envisions a "collaborative process between school districts and families"; Congress specifically amended the IDEA to place some responsibility on parents by instructing courts to reduce or deny tuition funding if parents behave unreasonably. *Donohue v. New York City Dep't of Educ.,* No. 20-CV-1942, 2021 WL 4481344, at *11 (S.D.N.Y. Sept. 30, 2021) (upholding an SRO's decision to award partial funding to Patrick Donohue (founder of iBrain and the firm that represents Plaintiffs in this case) on behalf of his daughter, *see id.* at 1). Accordingly, courts appropriately consider CSE meeting attendance *vel non* in determining whether parents cooperated with the CSE. *See, e.g.*, *GB*, 145 F. Supp. 3d at 257 (citing *M.H. v.*

---

[8] While Plaintiffs note that A.N.'s mother is legally blind and "unable to travel by herself," Pls. Resp., Dkt. 49 at 13, at no point during the administrative proceedings did Plaintiffs suggest that this prevented A.N.'s mother from attending the meeting. Nor do Plaintiffs explain why A.N.'s mother's disability would preclude her from attending the meeting via phone or would prevent A.N.'s father from attending the meeting. Additionally, even after Plaintiffs failed to attend the May 2018 CSE meeting, they made no effort to contact the CSE regarding the development of A.N.'s IEP. *See id.* at R0256 (Neske Testimony). A.N.'s mother could not have had a work conflict because, per her own testimony, she was unemployed at the time of the meeting. *See id.* at R0251 (Neske Testimony). Based on all of this, the IHO reasonably concluded that Dorothy Neske "was available to attend the IEP meeting" but refused to do so. *Id.* at R0066 (IHO Decision).

*New York City Dep't of Educ.*, 685 F.3d 217, 254 (2d Cir. 2012)); *M.N. on Behalf of J.N.*, 2017 WL 4641219, at *10; *FB v. New York City Dep't of Educ.*, 132 F. Supp. 3d 522, 557 (S.D.N.Y. 2015).

The record clearly demonstrates that the CSE labored to uphold its responsibility "to ensure that one or both of the parents of a child with a disability are present at each IEP Team meeting or are afforded the opportunity to participate, including . . . [s]cheduling the meeting at a mutually agreed on time and place." 34 C.F.R. § 300.322(a). As evidenced by the CSE's records, it attempted to arrange a mutually convenient time and place for the May 2018 meeting. *See* AR at R0067 (IHO Decision). While a school district's failure "to provide the student with a school placement of any sort" may be sufficient to require funding for plaintiffs' school placement under IDEA, that is not this case. A.N. was provided with a placement recommendation: iHope. *N.R. ex rel. T.R. v. Dep't of Educ. of City Sch. Dist. of City of New York*, No. 07-CV-9648, 2009 WL 874061, at *7.

Plaintiffs' argument that they are entitled to reimbursement because Defendants concede A.N. was not provided a FAPE is legally wrong. Taken literally, their argument collapses the entire three-part *Burlington/Carter* inquiry to a single question: did the district provide the student a FAPE? But that is not consistent with *Burlington/Carter*. The *Burlington/Carter* test is only triggered if the school district does not offer a FAPE; if a FAPE is offered, the inquiry stops at that point and the court does not proceed to the final prongs. *See M.C. ex rel. Mrs. C. v. Voluntown Bd. of Educ.*, 226 F.3d 60, 66 (2d Cir. 2000) ("If the challenged IEP was adequate, the state has satisfied its obligations under the IDEA and the necessary inquiry is at an end."). Under Plaintiff's view of the law, if the district fails to offer a FAPE, then the district court still does not proceed to the remaining prongs. Plaintiffs' view of the *Burlington/Carter* test, thus,

leaves no scenario in which the third prong has any effect, which is clearly not the law. *See Donohue*, 2021 WL 4481344, at *10.

Other equitable considerations, including, "whether the parents timely notified the school district of their intent to place their child in a private school, whether the parents visited the DOE's proposed placement," whether they considered the IEP, and "whether the parents or the DOE unreasonably delayed anything," *GB*, 145 F. Supp. 3d at 257 (internal citations omitted), do not change the Court's evaluation of the equities. While it is undisputed that Plaintiffs provided the requisite ten-day notice of their intent to place A.N. at iBrain, *see* AR at R1025 (Plaintiffs' Ex. P), pursuant to 20 U.S.C. § 1412 (a)(10)(C)(iii)(I)(bb), mere compliance with statutory procedural requirements does not weigh heavily in the analysis of the equities. Whether Plaintiffs visited the DOE's proposed placement is irrelevant because the proposed placement was A.N.'s current school, a school that A.N.'s parents had themselves chosen for him and in which he had been continually enrolled since the 2015-16 school year. Given Plaintiffs' conspicuous absence from the CSE meeting and the systematic, obstructionist behavior in which they engaged that was orchestrated by Mr. Donohue, the IHO and SRO appropriately determined that Plaintiffs did not genuinely consider the proposed placement at iHope. *See* AR at R0067 (SRO Decision). Finally, the "unreasonable delay" factor cuts in neither direction; Plaintiffs' conduct did not cause an unreasonable delay in producing an IEP but only because the CSE decided to proceed without their input. *See* AR at R0604–05.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment is DENIED, and Defendants' Cross-Motion for Summary Judgment is GRANTED. Accordingly, the case is

DISMISSED.  The Clerk of Court is respectfully directed to terminate all pending motions and deadlines and to close the case.


**SO ORDERED.**

Date:  **August 11, 2022**
      **New York, NY**

                                      **VALERIE CAPRONI**
                                  **United States District Judge**